MEYER GOODFRIEND and Others, Copartners, Doing Business under the Firm Name and Style of GOODFRIEND BROS., Respondents, *v.* AMERICAN CREDIT INDEMNITY COMPANY OF NEW YORK, Appellant.

First Department, July 6, 1926.

Insurance — credit insurance — prior to issuance of policy, customer of insured obtained pearl necklace valued at $40,000 on memorandum and gave notes therefor — notes were not paid and necklace was pawned — customer became insolvent and assured, claiming title to necklace, redeemed it — rider on policy covered prior transactions if customer was of sound financial condition at time premium was paid — second rider provided that if particular customer was given certain rating, policy would cover sales but it applied only to sales made after issuance of policy — burden of proof was on plaintiffs to show sound financial condition of customer — plaintiffs redeemed necklace on theory that title was in them — necklace was not sold under this theory and transaction was not covered — stipulation between parties did not avoid acts of plaintiffs in recovering necklace — letter in reply to request for consent to compromise with customer did not relieve plaintiffs from effect of assertion of title — claim by plaintiffs for reimbursement not within policy.

This action was brought on a policy of credit insurance issued by the plaintiffs. Prior to the issuance of the policy, the plaintiffs sold to a customer on memorandum a necklace valued at $40,000 and accepted notes therefor. The notes were not paid at maturity and the plaintiffs upon discovering that the necklace had been pawned by the customer, who had become insolvent, claiming title to the necklace, redeemed the same from the pawnbroker. A rider on the policy covered loss occurring during the term of the policy on goods shipped prior

thereto provided the customer was in sound financial condition at the date of the payment of the premium, and another rider, referring to the customer who purchased the pearl necklace, provided that, if it was rated at a specified rate by the National Jewelers Board of Trade Mercantile Agency, then the gross amount covered by the bond should be limited only to $25,000 gross.

The second rider on the policy did not obviate the necessity of showing that plaintiffs' customer was in sound financial condition, because that rider applied only to sales made during the term of the policy.

Therefore, the burden was upon the plaintiffs to prove that the customer was in sound financial condition at the time the premium was paid on the insurance policy in order to recover any loss arising out of the insolvency of the customer.

But no recovery whatever can be had since it is established that no sale of the necklace was consummated, for it appears that the insured recovered the necklace from the pawnbroker on the theory that the title to it was in the insured. Therefore, the transaction between the plaintiffs and their customer was taken without the coverage of the policy, which applies only to *bona fide* sales of merchandise resulting in losses because of the insolvency of the purchasers.

A stipulation entered into between the plaintiffs and the defendant, authorizing the plaintiffs to take any proceedings they might deem best for the recovery of the necklace or its value, without in any way affecting the rights of the parties on the insurance contract, did not avoid the effect of the plaintiffs' acts in recovering the necklace as their own property, for it was distinctly stipulated that the defendant disputed any liability under the policy, and, furthermore, the plaintiffs were limited by the stipulation to the commencement of a legal action for the recovery of the property and were not authorized to obtain the necklace by redeeming the same from pledge.

Furthermore, a letter written by the defendant in reply to a request that it consent to the compromise of plaintiffs' claim against the customer, which disclaimed any liability on the bond, did not change the fact that the plaintiffs had recovered the necklace on the assertion of title and had not obtained its possession by a legal action.

The plaintiffs' claim for reimbursement of moneys paid to redeem the necklace is not a claim within the purview of the policy.

APPEAL by the defendant, American Credit Indemnity Company of New York, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of New York on the 21st day of October, 1925, upon the verdict of a jury rendered by direction of the court pursuant to a stipulation that the case be tried before the court without a jury and that the verdict be directed with the same force and effect as though a jury were present.

*Walter J. Rosston* of counsel [*Horwitz, Rosston & Hort,* attorneys], for the appellant.

*Edward S. Greenbaum* of counsel [*Greenbaum, Wolff & Ernst,* attorneys], for the respondents.

FINCH, J.   The action was upon a policy of credit insurance, insuring plaintiffs against losses from sales of merchandise due to

the insolvency of its debtors. The question involved is whether
a transaction between the plaintiffs and a firm known as I. H. &
B. H. Weinberg constitutes a loss under the provisions of the policy.
On June 26, 1923, said firm of I. H. & B. H. Weinberg obtained
from the plaintiffs a pearl necklace on memorandum. On or about
July 27, 1923, B. H. Weinberg stated to the plaintiffs that he had
sold the necklace, whereupon plaintiffs billed him at the price of
$40,000 and received three notes therefor. The first note was for
$13,000, payable on October 27, 1923. The other notes were
payable subsequently. Shortly before the first note became due
Weinberg stated to the plaintiff that he was unable to meet this
note. On investigation it appeared that the necklace had been
pawned. Plaintiffs filed a claim under the policy and thereafter
it was stipulated between the plaintiffs and the defendant that the
plaintiffs might take any legal action necessary to secure possession
of the necklace without prejudice to the rights of the parties. The
plaintiffs subsequently obtained possession of the necklace by
paying to the pawnbroker the sum of $14,545. In October, 1923,
the Weinberg firm was found to be insolvent and a creditors'
committee was organized and a settlement agreement of twenty-five
cents on the dollar effected between the Weinberg estate and its
creditors. The plaintiffs filed a claim with the committee of
creditors for the amount paid in redemption of the necklace as
aforesaid, and accepted a twenty-five per cent dividend on said
claim. Said dividend reduced the amount of the loss sustained
by the plaintiffs through the necklace transaction. Under the
terms of the policy there were further reductions on account of
coinsurance, etc., so that plaintiffs' entire claim under the policy
amounted to $7,088.85. For this amount the court directed judg-
ment in favor of the plaintiffs.

The policy, by the provisions contained in the body thereof,
insures against loss in connection with certain merchandise shipped
and delivered during the term thereof. The transaction involving
the necklace had taken place prior to the issuance of the policy.
It, therefore, was not covered by the general provisions of the
policy. The general provisions of the policy, however, are affected
by two attached riders. One of these riders refers to accounts
for goods shipped prior to the term of the bond where the losses
occur during the term of the bond, and provides that such accounts
will be covered by the terms of the policy, provided the debtors
are in sound financial condition at the date of the payment of the
premium. The second rider provides, in part, as follows: " By
this rider attached to and made part of Bond #88,592-R, issued
to Goodfriend Bros., of New York, N. Y., it is agreed that if

I. H. & B. H. Weinberg of New York, N. Y., shall have at the date of each and every shipment under this Bond the rating of ' J 13 ' by the National Jewelers Board of Trade Mercantile Agency or a rating higher than ' J 13,' both as to capital and credit, then the gross amount covered by this Bond on said I. H. & B. H. Weinberg (but no other debtor) shall not be limited to the amount specified in the Table in Condition 1 of this Bond opposite the rating of ' J 13,' but shall be limited to Twenty-five Thousand ($25,000) Dollars gross."

The respondents contend that the effect of this second rider is to obviate, in so far as the Weinberg account is concerned, the necessity of showing the debtors to be of sound financial condition in connection with the outstanding accounts provided by the first mentioned rider and to substitute in place thereof a rating of " J 13." The said second rider, however, reasonably can have reference only to goods sold to Weinberg subsequent to the date of the policy. In order, therefore, to bring the necklace transaction within the coverage of the policy, it was necessary for the plaintiffs to show that the Weinberg firm was in sound financial condition at the date of the payment of the premium. In this connection the trial court held that the burden of proof was upon the defendant to show that the Weinberg firm was not in sound financial condition, and reached a result in favor of the plaintiffs chiefly because of a presumption of solvency and a lack of evidence to the contrary on the part of the defendant. In holding that the burden of proof was on the defendant, the trial court was in error. As noted, proof of sound financial condition was necessary in order to bring the alleged sale of the necklace within the coverage of the policy. It, therefore, was incumbent upon the plaintiffs affirmatively to make such proof as an essential element of their *prima facie* case. Upon this issue, therefore, the plaintiffs had the burden of proof. As was said by BARTLETT, J., in *Whitlatch* v. *Fidelity & Casualty Co.* (149 N. Y. 45, 47):

" The issue presented to the jury was a very narrow one. The complaint alleged that the insured died from external, violent and accidental means, and that his injuries were not wantonly inflicted by himself, nor inflicted while insane.

" The answer set up a general denial, after admitting the making of the policy, and then pleaded as a separate defense that the insured died from injuries wantonly inflicted by himself.

" The plaintiff, under the issues as framed, was called upon to prove by a preponderance of evidence that her husband died from external, violent and accidental means.

" The fact that the defendant had alleged as a separate defense that the injuries were wantonly inflicted by the insured did not tend in any way to relieve the plaintiff from the burden of proof under which she rested to make out a *prima facie* case."

There is, however, a more serious objection to the plaintiffs' recovery upon the claim in suit, and one which calls for a dismissal of the complaint. The proof shows unequivocally that the plaintiffs recovered the necklace in question upon the theory that title to such necklace was in the plaintiffs rather than in the estate of the bankrupt. In thus asserting title in themselves and recovering back the necklace, the plaintiffs must have adopted one of two theories — either the plaintiffs must have proceeded upon the theory that there never had been a sale of the necklace to the Weinberg firm or upon the theory that any such sale had been rescinded. In either event the transaction was thereby taken without the coverage of the policy, since the policy, by its terms, covered only losses arising out of *bona fide* sales of merchandise, because of insolvency of the purchasers. In this connection the policy provides: " Hereby Guarantees, under the Conditions and subject to the Stipulation set forth on the within pages, Goodfriend Bros., of New York, N. Y., engaged in the business of Pearls & Precious Stones, against loss, to an amount not exceeding One Hundred Thousand ($100,000) Dollars, due to insolvency, as hereinafter defined, of debtors, which insolvency shall occur within the term beginning the 7th day of September, 1923, and ending the 6th day of September, 1924, and which loss shall result from the Indemnified's *bona fide* sales of Pearls & Precious Stones (except diamonds) shipped and delivered during said term in the usual course of business to individuals, firms, copartnerships or corporations * * *."

The plaintiffs rely upon a stipulation between the parties to avoid the effect of their aforesaid acts in recovering the necklace. Said stipulation is dated October 26, 1923, and reads as follows:

" WHEREAS, Goodfriend Brothers of New York, New York (hereinafter called Indemnified) are the holders of a Bond of Indemnity No. 88,592-R issued by The American Credit Indemnity Company of New York (hereinafter called Company) dated September 12, 1923, and

" WHEREAS, the Indemnified has notified the Company of an alleged claim against Messrs. I. H. & B. H. Weinberg, New York City, covering one Pearl Necklace valued at $40,000, which claim the Company has not agreed to accept as a liability under said Bond of Indemnity, and

" WHEREAS, it is desirable and advisable that immediate action

should be taken to recover said Necklace or the value thereof without waiting for any determination of the respective rights of the Indemnified and the Company under the terms of said Bond Of Indemnity.

" *Now therefore,* in consideration of the mutual promises and covenants herein contained, it is hereby agreed by and between the Indemnified and the Company:

" *1st.* That the Indemnified may institute and prosecute on its own account any legal action which it deems proper against any party or parties for the purpose of recovering said Necklace or the value thereof.

" *2nd.* That any action so taken by the Indemnified shall be without prejudice to any right or privilege which the Indemnified may now have under said Bond Of Indemnity.

" *3rd.* That this consent by the Company to the Indemnified's taking such action shall not be construed as an admission of liability, nor constitute a waiver of any of the terms and conditions of said Bond Of Indemnity.

" *4th.* That it is the intention of the parties hereto that the effect of this agreement shall be limited to providing a sanction for immediate action to recover said Necklace or its value, while reserving to both parties all rights they now have under said Bond Of Indemnity and that neither party shall be considered to have acquired any right or assumed any liability with respect to the coverage of said claim by said Bond of Indemnity by reason of having entered into this agreement."

It thus appears that the stipulation expressly recites that the defendant disputed any liability under the bond. Further, that the permission granted to the plaintiffs was limited to the commencement of a legal action for the recovery of the necklace. The plaintiffs were not authorized to obtain the necklace by redeeming the same from pledge. Therefore, when the plaintiffs departed from the provisions of the stipulation, they lost the protection of the same. Apparently the intention of the stipulation was to permit the plaintiffs to attempt to recover the necklace by legal action which might result in the recovery of the necklace without cost to the plaintiffs, and, in the event of the plaintiffs being unsuccessful in such attempt, to provide that plaintiffs' rights should not thereby be prejudiced. On the other hand, if the plaintiffs were successful in recovering the necklace in a legal action, they would be saved from all loss and the defendant absolved from all liability.

The plaintiffs further rely on a letter written by the defendant to the attorneys of the plaintiffs under date of November 26, 1923,

in response to a request for permission to accept the settlement of twenty-five per cent offered to creditors of the Weinberg firm. Said letter reads as follows:

" DEAR SIRS:
" In Relation to Goodfriend Bros.
vs.
" I. H. & B. H. Weinberg.

" I have your letter of November 22nd, 1923, in relation to the above styled claim, about which there has been some correspondence in the past.

" I note that the Bondholder has an offer to compromise the claim on the basis of payment of 25 cents on the dollar, and that you request our consent to make this settlement.

" Under the terms and conditions of the Bond, and the facts surrounding the transaction entered into between Goodfriend Brothers and I. H. & B. H. Weinberg, we do not feel that there is any liability to Goodfriend Brothers, and do not feel that we are in any way interested in any proposed settlement.

" We are perfectly willing to agree with you at the present time that anything you might do on behalf of your client, Goodfriend Brothers, by way of making settlement shall not in any way have any bearing upon your ultimate claim against the American Credit-Indemnity Company, if they should deem it necessary to file a claim under the Bond, nor shall they be considered as waiving any of their rights under the Bond, if the proposed settlement is effected."

From said letter it appears that the defendant expressly disclaimed any liability upon the bond, and hence the letter in no way affects the existing status of the matter, namely, that the plaintiffs had asserted title in themselves to the necklace in question and obtained the same, not by a legal action but by redeeming it from pledge. The plaintiffs' claim is a claim for reimbursement of moneys paid to redeem the necklace. This is not a claim within the purview of the policy issued by the defendant.

It follows that the judgment appealed from should be reversed, with costs, and the complaint dismissed, with costs.

CLARKE, P. J., DOWLING, MCAVOY and MARTIN, JJ., concur.

Judgment reversed, with costs, and complaint dismissed, with costs.